IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

SHOE YORK, LLC and STEPHEN KLUBACK,

                     Plaintiffs,

- against -                                              1:10-cv-7738(RPP)

BRIAN BETSCHART

                     Defendant.

---------------------------------------------------------X

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
## OF DEFENDANT BRIAN BETSCHART

Natalie Sulimani (NS2015)
Benjamin Nahoum (BN2015)
Sulimani Law Firm, PC
116 West 23rd Street, Ste 500
New York, NY 10011
212.863.9614 Tel
718.228.8739 Fax

Defendant BRIAN BETSCHART ("BETSCHART") answers Plaintiffs' SHOE YORK, L.L.C. and STEPHEN KLUBACK (hereinafter collectively "PLAINTIFFS") Complaint as follows:

## ANSWER TO SHOE YORK, LLC AND STEPHEN KLUBACK'S COMPLAINT

### JURISDICTION AND VENUE

1. Admitted.

2. BETSCHART admits that venue is proper. BETSCHART lacks sufficient knowledge to admit or deny allegations as to PLAINTIFF's location. BETSCHART denies the remaining allegations in this paragraph.

3. Denied.

4. Admitted.

### THE PARTIES

5. BETSCHART lacks sufficient knowledge to admit or deny the allegations of this paragraph.

6. BETSCHART lacks sufficient knowledge to admit or deny the allegations of this paragraph.

7. BETSCHART lacks sufficient knowledge to admit or deny the allegations of this paragraph.

8. Admitted.

### NATURE OF THE CASE

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

### FACTS

14. BETSCHART lacks sufficient knowledge to admit or deny the allegations in this paragraph.

15. BETSCHART lacks sufficient knowledge to admit or deny the allegations in this paragraph.

16. BETSCHART lacks sufficient knowledge to admit or deny the allegations in this paragraph.

17. BETSCHART lacks sufficient knowledge to admit or deny the allegations in this paragraph.

18. Denied.

19. BETSCHART lacks sufficient knowledge to admit or deny the allegations in this paragraph.

20. Admitted.

21. BETSCHART lacks sufficient knowledge to admit or deny the allegations in this paragraph.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. BETSCHART admits that this paragraph accurately restates a portion of the Revenue Agreement. BETSCHART denies the remaining allegations in this paragraph.

71. Denied.

72. Denied.

73. BETSCHART admits that this paragraph accurately restates a portion of the Revenue Agreement. BETSCHART denies the remaining allegations in this paragraph.

74. Denied.

75. Denied.

76. BETSCHART admits that this paragraph accurately restates a portion of the Revenue Agreement. Betschart denies the remaining allegations in this paragraph.

77. Denied.

78. Denied.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT**

(Breach of Partnership Agreement and For Accounting)

(This Cause of Action is Moot / Motion to Dismiss Sustained)

79. This paragraph requires no response.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT

(Conversion of Partnership Property)

(This Cause of Action is Moot / Motion to Dismiss Sustained)

91. This paragraph requires no response.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT

(Breach of Partnership Fiduciary Duty and Imposition of Constructive Trust)

(This Cause of Action is Moot / Motion to Dismiss Sustained)

96. This paragraph requires no response.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT

(Breach of Revenue Agreement and For Accounting)

102. This paragraph requires no response.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT

(Conversion of Partnership Property)

(This Cause of Action is Moot / Motion to Dismiss Sustained)

114. This paragraph requires no response.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT

(Tortious Interference with Contract)

(This Cause of Action is Moot / Motion to Dismiss Sustained)

119. This paragraph requires no response.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

### AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANT

(Slander)

(This Cause of Action is Moot / Motion to Dismiss Sustained)

125. This paragraph requires no response.

126. Denied.

### AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST DEFENDANT

(Unjust Enrichment/Quantum Meruit)

127. This paragraph requires no response.

128. Denied.

129. Denied.

130. Denied.

### AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT

(Fraud/Misrepresentation)

(This Cause of Action is Moot / Motion to Dismiss Sustained)

131. This paragraph requires no response.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

138. Denied.

### AFFIRMATIVE DEFENSES

By way of further answer and affirmative defenses, BETSCHART states as follows:

### FIRST AFFIRMATIVE DEFENSE

All or some of PLAINTIFFS' purported claims fail to state facts sufficient to constitute a cause of action against BETSCHART.

### SECOND AFFIRMATIVE DEFENSE

All or some of PLAINTIFFS' purported claims are barred by the doctrines of waiver, acquiescence, and estoppel.

### THIRD AFFIRMATIVE DEFENSE

All or some of PLAINTIFFS' purported claims are barred as the October Revenue Sharing Agreement is not a binding or enforceable agreement.

### FOURTH AFFIRMATIVE DEFENSE

All or some of PLAINTIFFS' purported claims are barred by virtue of PLAINTIFFS's fraud, deceit, concealment, misrepresentations, and/or unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

All or some of PLAINTIFFS' purported claims are barred because BETSCHART was not the actual or proximate cause of PLAINTIFFS' damages, if any.

**SIXTH AFFIRMATIVE DEFENSE**

PLAINTIFFS failed to mitigate damages, if any.

**SEVENTH AFFIRMATIVE DEFENSE**

All or some of PLAINTIFFS' purported claims are barred, in whole or in part, because BETSCHART did not owe PLAINTIFFS any duty.

**EIGHTH AFFIRMATIVE DEFENSE**

Each of the purported contract clauses of action set forth in the PLAINTIFFS' complaint fails due to inadequate consideration.

**NINTH AFFIRMATIVE DEFENSE**

Each of the purported causes of action set forth in the PLAINTIFFS' complaint fails dues to the unilateral and/or mutual mistake of the parties.

**TENTH AFFIRMATIVE DEFENSE**

All of PLAINTIFFS' causes of action are barred in whole or in part because BETSCHART's actions were justified and/or privileged.

**ELEVENTH AFFIRMATIVE DEFENSE**

Each of the purported causes of action set forth in the PLAINTIFFS' complaint is barred in whole or in part because PLAINTIFFS substantially and materially breached the contract alleged herein by making material misrepresentations.

**TWELFTH AFFIRMATIVE DEFENSE**

Each of the purported causes of action set forth in the PLAINTIFFS' complaint is barred in whole or in part because BETSCHART acted in good faith, exercised reasonably care, and complied with terms of the contract alleged herein with respect to matter alleged in PLAINTIFFS' complaint.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Each of the purported causes of action set forth in the PLAINTIFFS' complaint is barred in whole or in part because PLAINTIFFS have failed to perform conditions, including conditions precedent, covenants, requirements and/or promises required to be performed by PLAINTIFFS under

the contract alleged and because performance on part of PLAINTIFFS was a condition precedent to performance of BETSCHART's obligations, if any.

### FOURTEENTH AFFIRMATIVE DEFENSE

As a defense to any and all causes of action alleged against BETSCHART, and to the complaint in its entirety, they are barred because PLAINTIFFS have been damaged, if at all, by virtue of their own acts or omissions.

### FIFTEENTH AFFIRMATIVE DEFENSE

As a defense to any and all causes of action alleged against BETSCHART, and to the complaint in its entirety, they are barred because BETSCHART's performance on the alleged contract is excused by mistake of fact and/or law.

### SIXTEENTH AFFIRMATIVE DEFENSE

PLAINTIFFS are barred from the doctrine of *in pari delicto* from obtaining the requested relief.

### ADDITIONAL DEFENSES

At the time of the filing of this answer, affirmative defense may not have been alleged for reasons that insufficient facts and information were available after reasonable inquiry. BETSCHART therefore reserves the right to amend this answer to allege additional affirmative defenses based upon subsequent discovery or new or different facts or subsequent appreciation of currently known facts.

### COUNTERCLAIMS

### Preliminary Statement

1.  This action arises from PLAINTIFFS unilateral ongoing forceful attempts to become part owner in the website sneakerfiles.com (hereinafter, "SneakerFiles") and by affirmatively employing tactics to defraud BETSCHART of SneakerFiles.

2.  Parties entered into a Revenue Sharing Agreement (hereinafter, the "Agreement").

3.  As per the Agreement, Parties were to share in the revenue of ShoeYork and SneakerFiles (collectively the "Sites") and PLAINTIFFS were to continue to improve on and commercialize ShoeYork.

4. PLAINTIFFS failed to make good on their promises in the Agreement and instead pursued their own agenda of usurping SneakerFiles through, among other things, misrepresentations and unilateral dealings.

**Facts**

5. BETSCHART founded SneakerFiles in 2006 quickly making SneakerFiles a robust and highly trafficked and as such, profitable website.

6. Given the standing of SneakerFiles in the online sneaker and fashion industry, PLAINTIFFS approached BETSCHART in early 2007 to link ShoeYork to SneakerFiles to cross promote. ShoeYork is an eCommerce website for sneakers generating revenue from sneaker sales and advertising.

7. In January 2008, BETSCHART agreed, on a trial basis, that the PLAINTIFFS, as an independent contractor, would sell advertising space on SneakerFiles to third party advertisers and as such, PLAINTIFFS would receive a commission.

8. In April 2008, it was evident to BETSCHART that PLAINTIFFS and BETSCHART could no longer work together. Besides PLAINTIFFS trying to run SneakerFiles as his own, PLAINTIFFS were also becoming a liability as to how they conducted themselves with potential advertisers.

9. BETSCHART would spend a great deal of time smoothing things over with advertisers due to PLAINTIFFS erratic and often offensive behavior.

10. BETSCHART ended the arrangement and in an effort to part ways amicably, BETSCHART gave PLAINTIFFS $4,000 on account of services rendered.

11. In July 2008, PLAINTIFFS attempted to renew the relationship with promises to completely revamp the ShoeYork website. This would increase traffic and thereby increase revenue on ShoeYork. It was with this promise that PLAINTIFFS approached BETSCHART with the idea of a

revenue sharing agreement.

12. BETSCHART, only with assurances that PLAINTIFFS would focus on ShoeYork, agreed to this seemingly promised mutually beneficial relationship.

13. In September 2008, PLAINTIFFS presented to BETSCHART a revenue sharing agreement that was drafted by his attorneys. BETSCHART reviewed the contract, signed it, and returned it to PLAINTIFFS. (Attached as Exhibit A)

14. Upon signing, BETSCHART gave PLAINTIFFS a $10,000 draw on commission as good faith for the contractual working relationship.

15. A few days later in October 2008, PLAINTIFFS sent BETSCHART a different Revenue Sharing Agreement. (Exhibit A of the Complaint) (Attached as Exhibit B)  BETSCHART was told that this was the 'official contract'.

16. PLAINTIFFS represented that the terms were the same, BETSCHART signed that contract, and returned it overnight to PLAINTIFFS.  PLAINTIFFS did not mention the changes nor did BETSCHART suspect changes were made.

17. Both contracts were revenue sharing agreements, but, among other things, the first contract was exclusive for 3 years, (which was agreed upon) while the second contract was exclusive for 5 years (which was not agreed upon).

18. According to the Revenue Sharing Agreement, Parties were to share revenue generated from the Sites.

19. Each month, BETSCHART paid his revenue share from SneakerFiles each month according to PLAINTIFFS' accounting.

20. Each month, BETSCHART'S request for PLAINTIFFS to work on, improve and commercialize ShoeYork to increase its revenue was continuously rebuffed.  PLAINTIFFS abandoned all efforts on the Shoe York Project.

21. PLAINTIFFS never shared revenue or even revenue information from ShoeYork despite online and offline sneaker sales, advertising revenue, and increased exposure through SneakerFiles.

22. PLAINTIFFS, while being an independent contractor with SneakerFiles, received many perks from the industry including free products as well as free publicity and advertising. All of which increased revenue for PLAINTIFFS. This, too, was revenue that was never shared with BETSCHART as per the Revenue Sharing Agreement.

23. Growing frustrated with PLAINTIFFS lack of performance under the Agreement, the relationship began to sour again.

24. BETSCHART upon reviewing advertising agreements for SneakerFiles, learned that PLAINTIFFS signed contracts in PLAINTIFFS name and even directly routed some SneakerFiles advertising revenue to PLAINTIFFS solely owned bank accounts.

25. This and the following chain of events began the deterioration of the relationship to where we are today.

26. PLAINTIFFS would use BETSCHART resources to interview professional basketball players and celebrities on the pretense that it would be used for SneakerFiles, instead PLAINTIFFS used these for their own personal use and on ShoeYork with no credit to SneakerFiles.

27. PLAINTIFFS, having access to SneakerFiles code and website, would remove SneakerFiles pictures tagged with the brand SNEAKERFILES while replacing the tag with SHOE YORK.

28. PLAINTIFFS continued to threaten the SneakerFiles goodwill and brand by entering into contracts without authority, as well as contacting advertisers in an abrasive manner causing detriment to Sneakerfiles.

29. PLAINTIFFS utilized the SneakerFiles brand to make a name for themselves that they would otherwise not have been able to do.

30. Having respected the Agreement despite its unfair terms, BETSCHART attempted to mediate resulting in PLAINTIFFS threatening to lock BETSCHART out of WeeklyDrop.com (a jointly owned site) and removing SneakerFiles' links from Dime Mag, Bounce Mag, Shoe York, and Weekly Drop which would result in a drop in revenue.

31. In March 2010, PLAINTIFFS had a discrepancy in the accounting which prompted BETSCHART to ask for PLAINTIFFS to open the books according to the terms of the Agreement. PLAINTIFFS refused.

## FIRST COUNTERCLAIM

### (Breach of Contract and Accounting)

32. BETSCHART repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 above, as if fully set forth herein.

33. PLAINTIFFS and the defendant BETSCHART entered into a written signed Agreement for the purpose of revenue sharing.

34. The Parties were to work on their respective websites and share in the revenue of the Sites.

35. BETSCHART had maintained SneakerFiles and paid the PLAINTIFFS as according to the terms of the Agreement.

36. PLAINTIFFS materially breached said Agreement by failing to work on ShoeYork, whereby failing to commercialize ShoeYork to profitability and share in the revenue of ShoeYork.

37. PLAINTIFFS also breached said Agreement by failing to account for sneaker sales that were generated through ShoeYork, which revenue was to be shared with BETSCHART as per the Agreement.

38. As a direct and proximate result of PLAINTIFFS' breaches, BETSCHART has been monetarily damaged.

39. That said damages were incurred solely as a result of the breach of the Agreement by PLAINTIFFS, without any culpable conduct or breach on behalf of the defendant, BETSCHART.

40. That defendant, BETSCHART has mitigated his damages in every manner possible under the law.

### SECOND COUNTERCLAIM

### (Conversion)

41. BETSCHART repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 above, as if fully set forth herein.

42. PLAINTIFFS, while selling advertising for SneakerFiles, fraudulently used the Sneakerfiles name to secure contracts which paid directly to PLAINTIFFS' bank accounts.

43. This revenue was the property of BETSCHART and should have been paid to BETSCHART before being accounted for according to the revenue sharing agreement.

44. As PLAINTIFFS took this revenue as their own and never accounted this revenue as SneakerFiles revenue, the revenue was never shared, as per the Agreement, with BETSCHART.

45. As a direct and proximate result of PLAINTIFFS' conversion, BETSCHART has been monetarily damaged.

### THIRD COUNTERCLAIM

### (Fraud in the Inducement)

46. BETSCHART repeats and re-alleges each and every allegation contained in paragraphs 1 through 45 above, as if fully set forth herein.

47. PLAINTIFFS promised BETSCHART that in exchange for BETSCHART'S agreeing to the revenue sharing agreement that PLAINTIFFS would completely redesign ShoeYork in an effort to

increase traffic and thereby increase ShoeYork's revenue.

48. Upon reliance on this promise, BETSCHART agreed and signed the Agreement.

49. PLAINTIFFS representations were false. In fact, PLAINTIFFS by their own admission in the Complaint, as well as in numerous communications with BETSCHART, failed to exert the promised efforts on ShoeYork despite repeated pleas by BETSCHART.

50. As a result of PLAINTIFFS' fraud, revenue on ShoeYork had not grown as it would have had PLAINTIFFS exerted the efforts that they had promised and thereby BETSCHART'S share of ShoeYork's revenue was substantially lower than it would have been.

51. As a direct and proximate result of PLAINTIFFS' fraud, BETSCHART has been monetarily damaged.

52. PLAINTIFFS' act was done with such knowledge and malicious intent that they knew would cause BETSCHART harm, that BETSCHART is entitled to punitive damages in an amount to be determined by proof at trial.

## FOURTH COUNTERCLAIM

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

53. BETSCHART repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 above, as if fully set forth herein.

54. PLAINTIFFS and the defendant BETSCHART entered into a written signed Agreement for the purpose of revenue sharing.

55. The Parties were to work on their respective websites and share in the revenue of the Sites.

56. BETSCHART had maintained SneakerFiles and paid the PLAINTIFFS as according to the terms of the Agreement.

57. PLAINTIFFS materially breached said Agreement by failing to work on ShoeYork, whereby failing to commercialize ShoeYork to profitability and share in the revenue of ShoeYork.

58. PLAINTIFFS also breached said Agreement by failing to account for sneaker sales that were generated through ShoeYork, which revenue was to be shared with BETSCHART as per the Agreement.

59. As a direct and proximate result of PLAINTIFFS' breaches, BETSCHART has been monetarily damaged.

60. That said damages were incurred solely as a result of the breach of the Agreement by PLAINTIFFS, without any culpable conduct or breach on behalf of the defendant, BETSCHART.

61. That defendant, BETSCHART has mitigated his damages in every manner possible under the law.

## **FIFTH COUNTERCLAIM**

### **(Fraud)**

62. BETSCHART repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 above, as if fully set forth herein.

63. PLAINTIFFS presented BETSCHART with a revenue sharing agreement in September 2008.

64. Days after that agreement was executed, PLAINTIFFS presented BETSCHART with another version of a revenue sharing agreement. PLAINTIFFS represented to BETSCHART that this second agreement was the official version of the Agreement.

65. PLAINTIFFS changed and added various terms in this second agreement, such as extending the 3 year term to 5 years, with no mention or consent.

66. BETSCHART relied on PLAINTIFFS' representations that the new Official Contract was

simply an identical iteration of the one he already signed.

67. PLAINTIFFS knew that BETSCHART would rely on his representations and BETSCHART did rely on those representations.

68. As a direct and proximate result of PLAINTIFFS' fraud, BETSCHART has been monetarily damaged.

69. PLAINTIFFS' act was done with such knowledge and malicious intent that they knew would cause BETSCHART harm, that BETSCHART is entitled to punitive damages in an amount to be determined by proof at trial.

### SIXTH COUNTERCLAIM

### (Misappropriation)

70. BETSCHART repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 above, as if fully set forth herein.

71. PLAINTIFFS, while selling advertising for SneakerFiles, fraudulently used the Sneakerfiles name to secure contracts which paid directly to PLAINTIFFS' bank accounts.

72. This revenue was the property of BETSCHART and should have been paid to BETSCHART before being accounted for according to the revenue sharing agreement.

73. As PLAINTIFFS took this revenue as their own and never accounted this revenue as SneakerFiles revenue, the revenue was never shared, as per the Agreement, with BETSCHART.

74. As a direct and proximate result of PLAINTIFFS' misappropriation, BETSCHART has been monetarily damaged.

### PRAYER

WHEREFORE, BETSCHART respectfully requests judgment in its favor against PLAINTIFFS,

whereby PLAINTIFFS take nothing by this action, that this action be dismissed in whole with prejudice, and that BETSCHART be awarded compensatory and any and all damages available by law, his costs and attorneys' fees, and have all other relief to which he is entitled or that this Court deems just and equitable.

## JURY DEMAND

Defendant BETSCHART demands a jury trial in this action.

Dated: May 26, 2011
       New York, New York

                Sulimani Law Firm, PC

                By: /S/ BENJAMIN NAHOUM

                    Natalie Sulimani (NS 2015)
                    Benjamin Nahoum (BN 2015)
                    116 West 23rd Street, Ste 500
                    New York, NY 10011
                    212.863.9614 Tel
                    718.228.8739 Fax

                *Attorneys for Defendant, Brian Betschart*